THOMAS LOCKHART and others *v.* ROBERT B. JONES.

In a contest between an intervening party and the plaintiffs, attaching creditors, the evidence of an agent of the intervenors, to whom bills of lading of the property attached had been delivered, is admissible to prove statements made by the debtor as to the purpose to which the property was to be applied. They are part of the *res gestæ.*

The statement of a witness that a judgment had been obtained in an action between certain parties, and had been assigned to a third person, is inadmissible. The re-

cord of the judgment and the written assignment, are the best evidence. Inferior evidence cannot be received, until it is shown that the best cannot be obtained.

Where the evidence discloses that a written agreement must have existed, the testimony of a witness as to his impressions of its contents, cannot be admitted. The agreement should be produced, or accounted for in some legal manner.

The affidavit of a party that "he had handed over a certain letter to his counsel for perusal, and that the said letter has been lost or mislaid, he not being able to find the same in his office, after making diligent search for it," is insufficient to justify the introduction of secondary evidence.

Whether a party is bound by the admissions of statements in a letter, the contents of which are offered to be proved, is a question which goes to the effect, and not the admissibility of the evidence.

APPEAL from the District Court of the First District, *Buchanan,* J.

GARLAND, J.    The plaintiffs sue Jones for the sum of $3,000, "as an advance, to be repaid by consignments of cotton" during the season, and for commissions and interest.   The defendant being a non-resident, an attachment was taken out and levied on 134 bales of cotton, marked with the initial letters of Jones' name.    Jacob Wilcox gave a bond, with security, to satisfy said judgment as might be rendered, and the cotton was delivered to him.

The attorney appointed to represent Jones, answered by a general denial.   About ten months after the bonding of the cotton, Wilcox, Anderson, & Co. claimed the cotton, alleging that it is their property, and not Jones', for this, that Jones, being indebted to them in the sum of about $456 86, they employed Mr. Trezvant, a lawyer at Memphis, to collect or settle the same.    That their attorney, being so authorized, employed one Moon as a special agent to receive the cotton, which, by an agreement between Trezvant and Jones, was to be received by said intervenors, as far as the same might go, in payment of said debt.    They aver that the cotton was actually delivered into the hands of Moon, their agent, and by him shipped for the purpose aforesaid, consigned to Jacob Willcox, one of the intervenors, and formed a part payment upon the aforesaid debt ; wherefore it is not liable to be seized or sold to pay the plaintiffs' debt.

On the trial the deposition of Trezvant was permitted to be

read, notwithstanding the objections of the plaintiffs' counsel. He swore that in the year 1838, Allens, Clark, & Co., obtained a judgment against Jones and others, for upwards of $4,000. This judgment "was soon after transferred or assigned, as witness thinks, to Willcox, Anderson & Co., at least he was informed that Mr. Willcox of that house had the control of it," and he was instructed to account to him for it. He further says, that Jones, being desirous of getting further indulgence, a correspondence was opened through him (witness) with Willcox, which resulted in an agreement, that if Jones would ship to Willcox by the 31st of January, 1840, cotton or other produce, and permit him to pay himself out of the proceeds, that then he (Willcox) would stay the execution until that date, which was done. The witness says, that *he believes* Jones was first bound to pay Willcox by accepted draft on New Orleans, and that on the 1st January, 1840, Willcox was informed by the acceptors that Jones had not furnished them with means to pay the bill or draft, whereupon he was instructed to have all Jones' property seized, if he did not at once send down cotton. This he agreed to do, and sometime in the month of February, 1840, two flat boats, were sent down loaded with cotton to Willcox. One of the boats was perhaps sent in January, 1840. He says that he paid Albert Moon $40 to go and attend to the shipping of the cotton, and this he did, sending down, as he informed witness, bills of lading, &c. One boat carried between sixty and seventy bales, and the other between seventy and eighty bales. The first arrived, and was sold by Willcox, and the amount credited on the debt of Jones. The other load was, as witness was informed by Willcox, attached in this action. The cotton was considered by all parties as the means of liquidating that particular debt, and the execution was then in the hands of the sheriff, and virtually bound the cotton before it was shipped. The witness says that Jones told him, that he purchased most of the cotton for the purpose of paying this debt.

The testimony of Moon was also received, who says he was employed at Memphis, to go to Jones' to receive some cotton for the intervenors ; that upon his arrival he told his business,

when Jones delivered the bills of lading, one of which he recognised when produced in court ; and that he understood him to say that he wished the proceeds of the cotton to go to the payment of the debt claimed by the intervenors. The cotton was not at Jones' when the witness went there, and he never saw it. He gave a receipt for the bills of lading, but it was not produced, nor its contents proved. The intervenors also proved by their clerk, the contents of the letter from Jones, said to have been lost ; also that he was indebted in the manner before stated, and that the bills of lading were in the hands of Will-·cox, before the cotton was attached. The bill filed in the record shows, that the cotton was " shipped by James Bond for Robert B. Jones," with the initials of his name marked on it, consigned to Willcox. The bill not produced, is admitted to be in the same form.

The intervenors had a judgment in their favor, and the plaintiffs have appealed.

· Our attention has been called to various bills of exception, which are all that it will be necessary to notice, as our opinion upon them makes it necessary to reverse the judgment, and remand the case ; and, as it may prevent future difficulty, we notice all the bills, although somewhat different from the usual practice.

The first is, to the opinion of the court receiving in evidence, " the statement of A. G. Moon, that in a conversation with Jones, he stated that he wished the cotton to go in payment of a debt due to Willcox, Anderson & Co.," which was objected to by the counsel for the plaintiff. In this we think the court did not err. Moon was sent as the agent of the intervenors, to receive the cotton. He says that he never saw it, but that the bills of lading were delivered to him, and that he gave a receipt for them. If that should be considered a delivery of the cotton, it is right that the purpose for which it was delivered should be stated. It is a part of the *res gestæ*, and the interveners are entitled to the full benefit of it.

The next exception taken by the plaintiffs, is to so much of the deposition of Trezvant, " as states that a judgment was obtained by Allens, Clarke & Co. against Jones, and that the

same was assigned to Willcox, Anderson & Co., because the judgment and assignment were the best evidence of the facts, which were not produced." The court below, we think, erred in admitting this evidence. It was not the best of which the nature of the case admitted. The plaintiffs had a right to insist on the production of the record of the suit of *Allens, Clarke & Co.* v. *Jones*, and of the written assignment of it to the intervenors, if one ever existed. The plaintiffs, also, object to so much of the deposition of Trezvant, " as states an agreement between Willcox and Jones, because the witness does not state it of his own knowledge, or from any other legal source of information." This seems to us a very general kind of exception, and well calculated to place the judge in a false position ; and it is somewhat surprising that he should have signed it, without some remark or explanation. If the witness did state any fact not within his own knowledge, or not derived from any legal source of information, then it was certainly wrong in the judge to permit it, when objection was made. We suppose the objection was intended to apply to the statement of the witness, that a correspondence had been opened, through him, between Willcox and Jones, which resulted in an agreement as to the disposition of the proceeds of the cotton. If so, we think that correspondence ought to have been produced, as the agreement must have been in writing ; and the witness should not have been permitted to give his impression, or opinion of its contents. The agreement should have been produced, or accounted for in some legal manner.

The plaintiffs also objected " to such parts of said deposition as stated, that the cotton was considered by all parties as the means of liquidating the debt due to Willcox, Anderson & Co., because such statements were hearsay." From the deposition of the witness, it seems that he never conferred with Willcox personally ; nor is it clear that he did so with Jones. Whatever did take place, or whatever was done, it appears from the deposition, was in writing ; therefore, the witness should not have been permitted to state what was his opinion, or what he *considered* the agreement of the parties. The agreement, if in writing, should have been produced.

The next exception of the plaintiffs is, to the admission of Turner as a witness, to prove that Jones had admitted to Willcox that he was indebted to him in a sum of about four thousand five hundred dollars, and that, " the indebtedness arose out of a judgment obtained against said Jones in Tennessee, by some one, who had assigned the same, in writing, to Willcox, Anderson & Co." The exception does not state the testimony of the witness very fully; yet, we are of opinion, that the court below should not have permitted him to say anything about the judgment, or assignment in writing. The record and assignment in writing, were the best testimony, and none inferior should have been admitted, until it was legally shown that the best evidence could not be obtained.

The plaintiffs, further, excepted to the opinion of the court, giving permission to the witness, Turner, to state the existence and contents of a letter, written by Jones to Willcox, relative to the cotton, about the time of shipment, the intervenors alleging that it was lost. That a letter existed, is clear from the statement of the witness; but that such evidence of its loss was given, as justified the admission of parol evidence of its contents, we cannot admit. The affidavit of Willcox, in effect, states, that he had given the letter to his counsel, for the purpose of enabling them to see that his claim was just and equitable; that he has since made diligent search for it in his (Willcox') office, and cannot find it.* That such a showing is insufficient to permit the introduction of secondary evidence to prove the contents of a written paper, is, we think, too clear to admit of doubt or argument; and the court erred in permitting

* The deposition of Willcox stated: " That about the 24th of February, 1840, he received a letter from Robert B. Jones, of Tipton county, Tennessee, dated the 18th day of February, 1840, stating that he, the said Jones, had purchased cotton to send to Willcox, Anderson & Co., in payment of the debt he was owing them, and that the same would be shipped to them on flatboats out of the Hatchie river; that the letter referred to, was, with other papers relating to this case, handed over to one, or both of the attorneys, for examination and perusal, to show the just and equitable claim of Willcox, Anderson & Co. to the property; and that said letter had been lost, or mislaid, he not being able to find the same in his office, after making diligent search for it."

the witness to testify as to the contents of the letter of the 18th of February, 1840, from the defendant Jones.

The last exception, it seems to us, goes more to the effect of the statement of the contents of the letter, than to the admissibility of such contents. Whether the plaintiffs are bound by the admissions, or proofs of the contents of said letter, is a question to be decided, after an examination of the testimony, and a trial upon the merits.

When we throw out of consideration all the testimony which we think was improperly admitted, we think there is not sufficient to sustain the demand of the intervenors; but, as there is a strong probability that the record and assignment can be produced, we think that justice requires that, as between the plaintiffs and interveners, the case should be remanded for a new trial.

It is ordered and decreed, that the judgment appealed from be annulled and reversed, and the case remanded for a new trial, with directions to the judge to decide, in relation to the evidence offered, as directed in the foregoing opinion, and in other respects to proceed according to law; the intervenors paying the costs of this appeal.

*P. Anderson*, for the appellants.
*Culbertson*, for the defendant.
*Josephs*, for the intervenors.